## TENNESSEE *v.* UNION AND PLANTERS' BANK.

## TENNESSEE *v.* BANK OF COMMERCE.

## TENNESSEE *v.* BANK OF COMMERCE.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF TENNESSEE.

Nos. 1020, 1021, 761. Argued January 12, 15, 1894. — Decided March 19, 1894.

Under the act of August 13, 1888, c. 866, the Circuit Court of the United States has no jurisdiction, either original, or by removal from a state court, of a suit as one arising under the Constitution, laws or treaties of the United States, unless that appears by the plaintiff's statement of his own claim.

THE *first case* was a bill in equity, filed January 26, 1893, in the Circuit Court of the United States for the Western District of Tennessee, by the State of Tennessee, and the county of Shelby in that State, against the Union and Planters' Bank of Memphis, a corporation organized under the laws of Tennessee, and having its place of business at Memphis in Shelby county, and against S. P. Read and W. A. Williamson, citizens of the State of Tennessee, to recover taxes alleged to be due to

·the State and county for the years 1887–1891, under the general tax act of the State of 1887, c. 2.

The bill, after alleging that the original charter of the defendant corporation, granted by the State of Tennessee in 1858, provided " that said company shall pay to the State of Tennessee an annual tax· of one half of one per cent on each share of stock subscribed, which shall be in 'lieu of all other taxes ; " and stating the provisions of the tax act of 1887, relied on by the plaintiffs, made the following allegations :

" The defendant bank claims that both its capital stock and the shares of stock in the hands of its stockholders are exempt from taxation by virtue of its charter.   Complainants, however, are advised and submit that the exemption contained in said charter applies to the shares of stock only and not to the capital stock of said institution, and that the latter in any event is subject to the taxing power of the State."

" It may be, however, that complainants are mistaken in the foregoing construction of the charter, and that the shares of stock are taxable and the capital stock of said institution exempt.   The question is one of law, and is submitted to the court for determination."

In view of the latter alternative, the bill alleged that the corporation had each year refused, on demand of the assessing officers of the State, to give them a list of its stockholders; made Williamson, a stockholder, and Read, the cashier of the bank, defendants ; and required the latter to disclose on oath the names of the other stockholders and the number of their shares, in order that they might be made defendants and proper relief be had against them.

The bill also set forth the amounts of taxes due from the corporation in· one alternative,.or from the stockholders in the other, amounting on either view to more than $5000 ;· and concluded as follows :

" Complainants further state and show that the defendant claims that under· and by virtue of the terms of its charter both its shares of stock and its capital stock are exempt from taxation, excepting only the one half of one per cent prescribed by the charter ; and that the revenue law of the State, under-

taking to tax the one or the other, is void, because in violation of the clause of the Constitution of the United States which forbids the State to pass any law impairing the obligation of a contract. It claims immunity from taxation upon that ground, and upon none other. The case is therefore one arising under the Constitution of the United States and within the jurisdiction of this court, this bill being brought to obtain an adjudication of the question of the exemption of the shares of stock, or of the capital stock, or both, of the defendant bank. Complainants aver that by the statute laws of the State of Tennessee they respectively have liens upon the capital stock of said bank, and upon any property in which the same may be invested, for the payment of any sums that may be adjudged due from the defendant bank on account of taxes laid on said capital stock, and liens upon the shares of stock in said bank for any taxes upon said shares that may be adjudged due thereon.

"Premises considered, complainants pray that the parties named as such in the caption be made defendants hereto; that subpœna and copy issue, returnable to the next proper rule day, according to the practice of the court, requiring them to appear and answer the allegations of this bill, the defendant S. P. Read answering under oath and making discovery as asked in the body of the bill; that the court will construe the charter of defendant company, and pass upon the claim of immunity from taxation set up by defendant company and its stockholders, adjudging the liability of the one or the other, or both, to taxation, determining upon which the taxes are laid for the several years mentioned in the bill, rendering judgment accordingly, and enforcing the liens given by the statute laws of the State; and that the court will grant such further relief, general and special, as complainants in equity ought to have."

The defendants filed an answer, admitting most of the facts alleged in the bill, and that the defendant corporation "claims that under and by virtue of the terms of its charter, both its shares of stock and its capital stock are exempt from taxation, excepting only the one half of one per cent prescribed by the charter, and that the revenue law of a State, undertaking to

tax the one or the other, is void, because in violation of that clause of the Constitution of the United States which forbids the State to pass any law impairing the obligation of a contract;" stating that "it does claim immunity from taxation upon that ground, but not, as alleged in the bill, upon none other;" and setting up, as additional grounds of defence, that the exemption of the corporation and its stockholders from taxation, except as provided in its charter, had been adjudicated and established by the decision of this court in *Farrington* v. *Tennessee*, 95 U. S. 679, and by the decision of the Supreme Court of Tennessee in *Memphis* v. *Union & Planter's Bank*, 7 Pickle, 546 ; and also that they were so exempt from taxation under the constitution and laws of Tennessee ; and insisting that the case was not one arising under the Constitution and laws of the United States, nor within the jurisdiction of the Circuit Court of the United States.

The plaintiffs filed a general replication ; and the court entered this decree : " This cause came on for final hearing on the pleadings and proofs, and having been argued by counsel and considered by the court, the court is of the opinion as follows, to wit : First, that the objection to the jurisdiction of the court, set up in the answer of the defendants, is not well taken ; that the jurisdiction of the court should be sustained, and the cause determined on its merits ; second, that by the charter of the defendant bank both the capital stock of the said bank and the shares of stock therein are exempt from taxation ; third, that the defence of *res judicata* set up in the answer need not, therefore, be passed upon. It is therefore ordered, adjudged and decreed that the bill of complaint herein be, and is hereby, dismissed at the cost of complainants." The plaintiffs appealed to this court.

The *second case* was a like bill in equity, filed at the same time by the State of Tennessee and the county of Shelby against the Bank of Commerce, a corporation of Tennessee and established at Memphis, and against its cashier, and one of its stockholders, both citizens of Tennessee ; and was dismissed on demurrer ; and the plaintiffs appealed to this court.

The *third case* was a bill in equity, filed October 22, 1891, in the chancery court of Shelby county, by the State of Tennessee and the city of Memphis against the Bank of Commerce and its cashier; and was substantially similar to the bills in the other cases, except in omitting the last paragraph but one, relating to the Constitution of the United States, the jurisdiction of the Circuit Court of the United States, and the lien of the plaintiffs. The case was removed into the Circuit Court of the United States upon the petition of the defendant corporation, upon the ground that, by reason of the exemption in its charter, the tax act of Tennessee, on which the plaintiffs relied, was repugnant to the provision of the Constitution of the United States that no State shall pass any law impairing the obligation of a contract. In the Circuit Court of the United States, a demurrer to the bill, on the same ground, was filed and sustained, and a final decree entered, dismissing the bill. 53 Fed. Rep. 735. The plaintiffs appealed to this court.

*Mr. S. P. Walker*, (with whom was *Mr. C. W. Metcalf* on brief,) for all the appellants.

*Mr. T. B. Turley*, (with whom was *Mr. Henry Craft* on the brief, in No. 1020,) for all the appellees.

*Mr. William H. Carroll* and *Mr. Julius A. Taylor* for appellees in No. 1021.

MR. JUSTICE GRAY, after stating the cases, delivered the opinion of the court.

We find it unnecessary to consider other objections to the maintenance of these three bills, or of any of them, because we are clearly of opinion that each suit is not one arising under the Constitution and laws of the United States, of which the Circuit Court of the United States has jurisdiction, either original, or by removal from a state court, under the act of March 3, 1887, c. 373, as corrected by the act of August 13, 1888, c. 866. 25 Stat. 434.

The Third Article of the Constitution, said Chief Justice Marshall, " enables the judicial department to receive jurisdiction to the full extent of the Constitution, laws and treaties of the United States, when any question respecting them shall assume such a form that the judicial power is capable of acting on it. That power is capable of acting only when the subject is submitted to it by a party who asserts his rights in the form prescribed by law. It then becomes a case, and the Constitution declares that the judicial power shall extend to all cases arising under the Constitution, laws and treaties of the United States." And " when a question to which the judicial power of the Union is extended by the Constitution forms an ingredient of the original cause, it is in the power of Congress to give the Circuit Courts jurisdiction of that cause, although other questions of fact or of law may be involved in it." But " the right of the plaintiff to sue cannot depend on the defence which the defendant may choose to set up. His right to sue is anterior to that defence, and must depend on the state of things when the action is brought. The questions which the case involves, then, must determine its character, whether those questions be made in the cause or not." *Osborn* v. *Bank of United States*, 9 Wheat. 738, 819, 823, 824. In this last clause, as the context shows, the word " then " (though printed between commas) means " at that time," that is to say, " when the action is brought."

The earliest act of Congress which conferred on the Circuit Courts of the United States general jurisdiction of suits of a civil nature, at common law or in equity, " arising under the Constitution or laws of the United States, or treaties made or which shall be made under their authority," was the act of March 3, 1875, c. 137. 18 Stat. 470. Under section 1 of that act, providing that those courts should have original cognizance of such suits when the matter in dispute exceeded the sum or value of $500, their jurisdiction was exercised in cases in which the plaintiff's statement of his cause of action showed that he relied on some right under the Constitution or laws of the United States. *Feibelman* v. *Packard*, 109 U. S. 421 ; *Kansas Pacific Railroad* v. *Atchison &c. Railroad*, 112 U. S.

414; *New Orleans* v. *Houston*, 119 U. S. 265; *Bachrach* v. *Norton*, 132 U. S. 337; *Cooke* v. *Avery*, 147 U. S. 375. And under section 2 of that act, which provided that any suit of a civil nature, at law or in equity, brought in any state court, "and arising under the Constitution or laws of the United States, or treaties made or which shall be made under their authority," might be removed by either party into the Circuit Court of the United States, it was held sufficient to justify a removal by the defendant that the record at the time of the removal showed that either party claimed a right under the Constitution or laws of the United States. *Railroad Co.* v. *Mississippi*, 102 U. S. 135; *Ames* v. *Kansas*, 111 U. S. 449, 462; *Brown* v. *Houston*, 114 U. S. 622; *Provident Savings Society* v. *Ford*, 114 U. S. 635, 642; *Pacific Railroad Removal Cases*, 115 U. S. 1; *Tennessee* v. *Whitworth*, 117 U. S. 129, 139; *Southern Pacific Railroad* v. *California*, 118 U. S. 109; *Bock* v. *Perkins*, 139 U. S. 628.

But, as has been decided under that act, "the suit must be one in which some title, right, privilege, or immunity on which the recovery depends will be defeated by one construction of the Constitution, or a law or treaty of the United States, or sustained by a contrary construction;" *Carson* v. *Dunham*, 121 U. S. 421, 427; "a cause cannot be removed from a state court simply because, in the progress of the litigation, it may become necessary to give a construction to the Constitution or laws of the United States;" *Gold Washing Co.* v. *Keyes*, 96 U. S. 199, 203; and "the question whether a party claims a right under the Constitution or laws of the United States is to be ascertained by the legal construction of its own allegations, and not by the effect attributed to those allegations by the adverse party." *Central Railroad* v. *Mills*, 113 U. S. 249, 257.

Even under the act of 1875, the jurisdiction of the Circuit Court of the United States could not be sustained over a suit originally brought in that court, upon the ground that the suit was one arising under the Constitution, laws or treaties of the United States, unless that appeared in the plaintiff's statement of his own claim. This was distinctly adjudged, and the reasons clearly stated, in *Metcalf* v. *Watertown*, 128 U. S. 586,

589, in which Mr. Justice Harlan, after pointing out that the cases, in which it had been held sufficient that the Federal question upon which the case depended was first presented by the answer or plea of the defendant, were cases of removal, in which, therefore, the requisite of jurisdiction appeared on the record at the time when the jurisdiction of the Circuit Court of the United States attached, said : " Where, however, the original jurisdiction of a Circuit Court of the United States is invoked upon the sole ground that the determination of the suit depends upon some question of a Federal nature, it must appear, at the outset, from the declaration or the bill of the party suing, that the suit is of that character ; in other words, it must appear, in that class of cases, that the suit was one of which the Circuit Court, at the time its jurisdiction is invoked, could properly take cognizance. If it does not so appear, then the court, upon demurrer or motion, or upon its own inspection of the pleading, must dismiss the suit ; just as it would remand to the state court a suit which the record, at the time of removal, failed to show was within the jurisdiction of the Circuit Court. It cannot retain it in order to see whether the defendant may not raise some question of a Federal nature upon which the right of recovery will finally depend ; and if so retained, the want of jurisdiction, at the commencement of the suit, is not cured by an answer or plea which may suggest a question of that kind." That view has been affirmed and acted on at the present term in *Colorado Co.* v. *Turck*, 150 U. S. 138, 143.

The same rule applies, more comprehensively, to the acts of 1887 and 1888. In section 1, as thereby amended, the words giving original cognizance to the Circuit Courts of the United States in this class of cases are the same as in the act of 1875, (except that the jurisdictional amount is fixed at $2000,) and it is therefore essential to their jurisdiction that the plaintiff's declaration or bill should show that he asserts a right under the Constitution or laws of the United States. But the corresponding clause in section 2 allows removals from a state court to be made only by defendants, and of suits " of which the Circuit Courts of the United States are given

original jurisdiction by the preceding section," thus limiting the jurisdiction of a Circuit Court of the United States on removal by the defendant, under this section, to such suits as might have been brought in that court by the plaintiff under the first section. 24 Stat. 553; 25 Stat. 434. The change is in accordance with the general policy of these acts, manifest upon their face, and often recognized by this court, to contract the jurisdiction of the Circuit Courts of the United States. *Smith* v. *Lyon*, 133 U. S. 315, 320; *In re Pennsylvania Co.*, 137 U. S. 451, 454; *Fisk* v. *Henarie*, 142 U. S. 459, 467; *Shaw* v. *Quincy Mining Co.*, 145 U. S. 444, 449; *Martin* v. *Baltimore & Ohio Railroad*, 151 U. S. 673, 687.

Congress, in making this change, may well have had in mind the reasons which so eminent a judge as Mr. Justice Miller invoked in support of his dissent from the original decision that a defence under the Constitution, laws or treaties of the United States was sufficient to justify a removal by the defendant under the act of 1875. "Looking," said he, "to the reasons which may have influenced Congress, it may well be supposed that while that body intended to allow the removal of a suit where the very foundation and support thereof was a law of the United States, it did not intend to authorize a removal where the cause of action depended solely on the law of the State, and when the act of Congress only came in question incidentally as part (it might be a very small part) of the defendant's plea in avoidance. In support of this view, it may be added, that he in such case is not without remedy in a Federal court; for if he has pleaded and relied on such defence in the state court, and that court has decided against him in regard to it, he can remove the case into this court by writ of error, and have the question he has thus raised decided here." *Railroad Co.* v. *Mississippi*, 102 U. S. 135, 144.

The acts of 1887 and 1888, indeed, contain special provisions as to particular kinds of cases arising under the Constitution or laws of the United States. By section 3, every receiver or manager of property, appointed by a court of the United States, is permitted to be sued without the previous leave of that court, but the suit is subject to its general equity juris-

diction so far as necessary to the ends of justice. By section 5, nothing in this act is to repeal or affect any jurisdiction or right mentioned in sections 641, 642, 643, 722, or title 24 of the Revised Statutes, or the act of March 1, 1875, c. 114, all of which relate to suits concerning civil rights, and section 643 relates also to the removal of suits against officers or other persons acting or claiming under any revenue law of the United States; or in the act of March 3, 1875, c. 137, § 8, which relates to notice to absent defendants in suits to enforce or to remove liens. And section 6 expressly repeals section 640 of the Revised Statutes, which authorized any suit commenced in a state court against any corporation, other than a banking corporation, organized under a law of the United States, to be removed into the Circuit Court of the United States upon the petition of the defendant stating that it had a defence arising under or by virtue of the Constitution, or of any treaty or law of the United States. 24 Stat. 554, 555 ; 25 Stat. 436. But those provisions have no application to the cases now before us, and contain, to say the least, nothing tending to show that it was intended that such a case as any of these might be removed into the Circuit Court of the United States for trial.

The difference between the act of March 3, 1875, and the later acts is illustrated by the recent case of *Texas & Pacific Railway* v. *Cox*, in which receivers, appointed by a Circuit Court of the United States, of a railroad corporation deriving its corporate powers from acts of Congress, were sued in the same court, without previous leave of the court, after the act of 1887 took effect. This court, speaking by the Chief Justice, after observing that the corporation would have been entitled, under the act of 1875, to remove a suit brought against it in a state court, maintained the jurisdiction of the Circuit Court of the United States of the action against the receivers, under the act of 1887, upon the ground that the right to sue, without the leave of the court which appointed them, receivers appointed by a court of the United States, was conferred by section 6 of that act, and therefore the suit was one arising under the Constitution and laws of the United States. 145 U. S. 593, 601, 603.

In each of the three cases now before this court, the only right claimed by the plaintiffs is under the law of Tennessee, and they assert no right whatever under the Constitution and laws of the United States. In the first and second bills, the only reference to the Constitution or laws of the United States is the suggestion that the defendants will contend that the law of the State under which the plaintiffs claim is void, because in contravention of the Constitution of the United States; and by the settled law of this court, as appears from the decisions above cited, a suggestion of one party, that the other will or may set up a claim under the Constitution or laws of the United States, does not make the suit one arising under that Constitution or those laws. In the third bill, no mention is made of the Constitution or laws of the United States, or of any right claimed under either; and no statement in the petition for removal, or in the demurrer, of the defendant corporation, can supply that want, under the existing act of Congress.

The result is that, in the first and second cases, the decrees must be reversed, at the cost of the plaintiffs, and the cases remanded to the Circuit Court of the United States with directions to dismiss the bills for want of jurisdiction; and that, in the third case, the decree must be reversed, at the cost of the defendants, and the case remanded to the Circuit Court of the United States with directions to remand it to the state court from which it was removed. The costs in each case are to be borne by the party who brought into the Circuit Court of the United States a case not within its jurisdiction. *Torrence* v. *Shedd*, 144 U. S. 527; *Martin* v. *Snyder*, 148 U. S. 663.

*Decrees reversed accordingly.*

Mr. Justice HARLAN, with whom concurred Mr. Justice FIELD, dissenting.

I agree that the decrees in the first and second of the above cases must be reversed with directions to dismiss the bills for want of jurisdiction in the Circuit Court.

But I cannot assent to the proposition that the third case, which was originally brought in one of the courts of the State,

was not removable to the Circuit Court of the United States upon the application of the defendant bank. In that case, as the opinion of the court shows, the State sought to enforce a lien for taxes alleged to have been given by a general statute of Tennessee upon the capital stock of the defendant. The bank defended upon the ground that its stock was exempt by the terms of its charter from such taxation, and that the statute under which the State brought its suit was, if applied to the defendant, repugnant to the provision of the Constitution of the United States forbidding the States from passing laws impairing the obligation of contracts.

The opinion of the court proceeds upon the general ground that, while a plaintiff, if his cause of action arises under the Constitution or laws of the United States, or under some treaty with a foreign power, may invoke the original jurisdiction of a Circuit Court of the United States, a *defendant* is not entitled, under the existing statutes, to remove from the state court into the Circuit Court of the United States any suit against him, in respect to which the original jurisdiction of the Federal court could not be invoked by the plaintiff, even where his defence goes to the whole cause of action set forth in the bill, declaration, or complaint, and is grounded *entirely upon the Constitution of the United States, or upon an act of Congress, or upon a treaty between the United States and a foreign power.* Of course the cases excepted by the fifth section of the act of March 3, 1887, c. 373, 24 Stat. 552, 555, to be presently referred to, cannot be brought under this rule.

By the Judiciary Act of 1789, the original jurisdiction of the Circuit Courts of the United States, in suits of a civil nature, at common law or in equity, was restricted to those in which the value of the matter in dispute exceeded, exclusive of costs, the sum or value of five hundred dollars, and in which the United States were plaintiffs or petitioners, or an alien was a party, or the suit was between a citizen of the State in which it was brought and a citizen of another State. And the right of removal was given only to the defendant in a suit commenced in a state court against an alien, or by a citizen of the State in which the suit was brought against a

citizen of another State, and, under certain circumstances, to the party in an action in which the title to land was concerned who relied upon a grant from a State other than that in which the action was pending. ·Act of September 24, 1789, c. 20, 1 Stat. 73, 78, 79.

The act of 1875 enlarged the original jurisdiction of the Circuit Courts of the United States so as to embrace all suits of a civil nature, at common law or in equity, in which the matter in dispute exceeded, exclusive of costs, the sum or value of five· hundred dollars, and "arising under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, or in which the United States are plaintiffs or petitioners, or in which there shall be a controversy between citizens of· different States or a controversy between citizens of the same State claiming lands under grants of different States, or a controversy between citizens of a State and foreign States, citizens, or subjects." In respect to each of these cases that act provided that "*either party* may remove said suit into the Circuit Court of the United States for the proper district." Act of March 3, 1875, c. 137, 18 Stat. 470.

The act of March 3, 1887, as amended in 1888, left the original jurisdiction of the Circuit Courts of the United States precisely as it was established by the act of 1875, except that it increased the sum or value of the matter in dispute, necessary to give jurisdiction, to two thousand dollars, exclusive of interest and costs. Act of August 13, 1888, c. 866, 25 Stat. 434.

The act of 1887 further provided as follows.:

"SEC. 2. That any suit of a civil nature, at law or in equity, arising under the Constitution or laws of the United States, ·or treaties made, or which shall be made, under their authority, ·of which the Circuit Courts of the United States are given ·original jurisdiction by the preceding section, which may now be pending, or which may hereafter be brought, in any state court, may be removed by the defendant or defendants therein to the Circuit Court of the United States for the proper district. Any other suits of a civil nature, at law or in equity, of which the Circuit Courts of the United States are given jurisdiction by the preceding section, and which are now pending, or which

may hereafter be brought in any state court, may be removed into the Circuit Court of the United States for the proper district by the defendant or defendants therein, being non-residents of that State; and when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different States, and which can be fully determined as between them, then either one or more of the defendants actually interested in such controversy may remove said suit into the Circuit Court of the United States for the proper district. . . ."

"SEC. 3. That whenever any party entitled to remove any suit mentioned in the next preceding section, except in such cases as are provided for in the last clause of said section, may desire to remove such suit from a state court to the Circuit Court of the United States, he may make and file a petition in such suit in such state court at the time, or any time before the defendant is required by the laws of the State or the rule of the state court in which such suit is brought, to answer or plead to the declaration or complaint of the plaintiff for the removal of such suit into the Circuit Court to be held in the district where such suit is pending, and shall make and file therewith a bond, with good and sufficient surety, for his or their entering in such Circuit Court, on the first day of its then next session, a copy of the record in such suit, and for paying all costs that may be awarded by the said Circuit Court, if said court shall hold that such suit was wrongfully or improperly removed thereto, and also for their appearing and entering special bail in such suit if special bail was originally requisite therein."

By the fifth section of that act it was declared that nothing in it should be "held, decreed, or construed to repeal or affect any jurisdiction or right mentioned either in sections six hundred and forty-one, or in six hundred and forty-two, or in seven hundred and twenty-two, or in Title twenty-four of the Revised Statutes of the United States, or mentioned in section eight of the act of Congress of which this act is an amendment, or in the act of Congress approved March first, eighteen hundred and seventy-five, entitled 'An act to protect all citi-

zens in their civil and legal rights.'" ` Section 641 of the Revised Statutes relates to civil suits and criminal prosecutions commenced in state courts, and involving the equal civil rights of citizens of the United States. Section 642 prescribes what shall be done when the petitioner who seeks the removal is in the actual custody of the state court. Section 643 gives the right of removal to the defendant in any civil suit or criminal prosecution against an officer, or any person acting under him, for any act done under the authority of a revenue law of the United States. Section 722 relates to proceedings, civil and criminal, in vindication of civil rights. Title 24 of the Revised Statutes relates to civil rights. The eighth section of the act of March 3, 1875, prescribes the mode in which absent defendants, in suits brought to enforce any legal or. equitable lien upon or claim to property within the district may be brought before the court. ·The act of March 1, 1875, has reference to the full and equal enjoyment of the accommodations, advantages, facilities of inns, public conveyances, theatres, and other places of public amusements.

There can be no question as to the import of the words "arising under the Constitution or laws of the United States," to be found in the acts of 1875 and 1887. It has long been settled that a suit was of that class if it necessarily involved a title, right, privilege, or immunity asserted, *by either party*, under the Constitution or laws of the United States. If the defence was based upon the Constitution or laws of the United States, the suit was one arising under that Constitution or those laws, although the *plaintiff* may not have asserted, in *his* pleading, any claim whatever of a Federal nature. *Railroad Co.* v. *Mississippi*, 102 U. S. 135, 140; *Feibelman* v. *Packard*, 109 U. S. 421; *Ames* v. *Kansas*, 111 U. S. 449, 462; *Pacific Railroad·Removal Cases*, 115 U. S. 1; *Starin* v. *New York*, 115 U. S. 248, 257; *Bachrack* v. *Norton*, 132 U. S. 337; *Bock* v. *Perkins*, 139 U. S. 628, 630. But the court now holds that the· effect of the words in the first clause of section two of the act of 1887, "Of which the Circuit Courts of the United States are given original jurisdiction by the preceding section," is to make the right of the *defendant* in a suit

arising under the Constitution or laws of the United States, or under a treaty, to remove it from the state court, depend upon the inquiry whether the suit was one in respect of which the original jurisdiction of the Circuit Court could be invoked by the plaintiff. In my judgment, this is an erroneous interpretation of the statute. It is too narrow. No such interpretation was suggested at the bar, nor do I think it has ever been before suggested in any case.

The main purpose of the second section of the act of 1887 was to restrict the right of removal to the defendant or defendants in suits of the kind mentioned in the first clause of that section, and to the defendant or defendants, " being non-residents " of the State, in all other suits mentioned in that section. It was not intended to deny to a defendant the right of removal where the suit, by reason of the nature of the defence, was one arising under the Constitution or laws of the United States, or treaties with foreign powers, while allowing the plaintiff, whose bill, declaration, or complaint made a suit of that kind, to invoke the original jurisdiction of the Circuit Court. What possible reason could there have been for denying to a defendant the right, by a removal of the suit, to invoke the jurisdiction of a Circuit Court of the United States for the protection of his rights under the Constitution or laws of the United States, while giving to the plaintiff the right to invoke the jurisdiction of the same court for the protection of similar rights under the Constitution and laws of the United States? One effect of the present decision is — except in the cases mentioned in the sections of the Revised Statutes and in the acts of Congress referred to in the fifth section of the act of 1887 — to prevent an officer of the United States, when sued in a state court on account of some act done by him, from removing the suit into the Federal court, although what he did is alleged to have been done in execution of some act of Congress, or pursuant to an order of a court of the United States.

If it be said that this was the condition of things under the original judiciary act, my answer is that Congress did not, by the act of 1887, evince a purpose to return to the policy indicated by the act of 1789 in respect to the concurrent juris-

diction of the courts of the United States and the state courts. This is shown by the fact that, while under the act of 1789, the Circuit Courts of the United States had no original jurisdiction of suits arising under the Constitution or laws of the United States, or under treaties with foreign powers, or of suits between citizens of the same State, claiming lands under grants of different States, or of controversies between citizens of a State and foreign States, citizens, or subjects, original jurisdiction in all such cases, as conferred by the act of 1875, is preserved to those courts by the act of 1887. It seems to me contrary to the general purpose of the latter act to hold that a suit, which is made by the plaintiff's pleading one arising under the Constitution or laws of the United States or a treaty, can be brought in the proper Circuit Court of the United States, while a suit which is made by the defendant's answer one arising under the Constitution or laws of the United States or a treaty, cannot be removed to the Federal court for hearing or trial. The words in the first clause of the second section of the act of 1887, "of which the Circuit Courts of the United States are given original jurisdiction by the preceding section," have, I think, been construed by the court with too much strictness. They were inserted in the act, in part, for the purpose of indicating that the suits mentioned in the second section as suits "arising under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority," and which could be removed, were of the same nature as the suits of the same kind described in the same language in section 1, and not for the purpose of limiting the right of removal to those suits arising under the Constitution or laws of the United States, or under treaties, which could be brought by an original action in a Circuit Court of the United States. The court, by its construction, does what the act of Congress does not do, and what it should not be supposed Congress intended to do, namely, it divides suits arising under the Constitution or laws of the United States and suits under treaties with foreign powers into two classes, and excludes one of those classes altogether from the original cognizance of the Circuit Courts

of the United States. It thus — except in the cases saved by the fifth section of the act of 1887 — makes a discrimination against a defendant, whose defence rests entirely upon the Constitution or laws of the United States, or on a treaty, that is not justified either by the policy or the words of the act of 1887.

The Judiciary Acts of 1789 and 1875 restricted the original jurisdiction of the Circuit Courts of the United States to suits, at law or in equity, in which the matter in dispute exceeded the sum or value of *five hundred dollars*, exclusive of costs. The act of 1887 fixed this amount at *two thousand dollars, exclusive of interest* and costs. It may well be held — indeed, the natural and reasonable construction of the act of 1887 is — that the words " of which the Circuit Courts of the United States are given original jurisdiction by the preceding section," were introduced for the purpose of making it clear that no suit, arising under the Constitution or the laws of the United States, or under any treaty, should be removed, unless the matter in dispute exceeded in value the sum of $2000, exclusive of interest and costs. But for the words in the second section of the act of 1887, " of which the Circuit Courts of the United States are given original jurisdiction by the preceding section," *any* suit arising under the Constitution or laws of the United States, or under a treaty, however small the amount in dispute, could have been removed from the state court. Those words being in the second section, no suit of that class could be removed into the Federal court, unless the value of the matter in dispute was such as is prescribed in " the preceding section," namely, $2000, exclusive of interest and costs.

Again, if, instead of suing to enforce the lien given by the statute, the State had levied upon the property of the bank, the officer making the levy could have been enjoined, at the suit of the bank, upon the very ground now set forth in its answer, namely, that the statute under which that officer proceeded was repugnant to the contract clause of the Constitution of the United States. Such a suit would have been one arising under the Constitution, and, therefore, cognizable by

the Circuit Court. *Allen* v. *Baltimore & Ohio Railroad,* 114 U. S. 311; *White* v. *Greenhow,* 114 U. S. 307; *Barry* v. *Edmunds,* 116 U. S. 550. Yet, under the decision just rendered, the bank cannot, by removing the present suit, invoke the jurisdiction of the Circuit Court for the determination of the same question.

Further, it was held in *Texas & Pacific Railway* v. *Cox,* 145 U. S. 593, that, without reference to the citizenship of the plaintiff, a suit for damages can be brought in a Circuit Court of the United States against receivers appointed by a Circuit Court of the United States of a railroad corporation created by an act of Congress, although the case involves no question of a Federal nature; this, upon the ground that the receivers, in executing their duties, were acting under judicial authority derived from the Constitution of the United States. Such a suit, if brought in a state court, could, I take it, be removed under the present decision, upon the ground simply that the plaintiff's suit was within the original cognizance of the Circuit Court. And yet, under the act of 1887, as now interpreted, a suit against a citizen or against a corporation created by a State cannot be removed, even if the defence rests exclusively on the Constitution of the United States. I cannot believe that Congress contemplated any such result.

I am of opinion that, under the act of 1887, a suit, involving the required amount, and "arising under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority" — whether the suit becomes one of that kind by reason of the allegations in the bill, declaration, or complaint, or by reason of the answer or defence — may be removed, not, as under the act of 1875, by either party, but by the defendant or defendants, of whatever State residents or citizens, in the mode and at the time prescribed by the act of 1887.

MR. JUSTICE FIELD authorizes me to say that he concurs in this dissenting opinion.

MR. JUSTICE WHITE, not having been a member of the court when these cases were argued, took no part in their decision.